UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STATE OF WISCONSIN,

          Appellant,          Case No. 17-cv-1635-bhl

  v.

BRIAN A HANSEN,
AMIE R HANSEN,

          Appellees.

---

### DECISION AND ORDER

---

This is an appeal of a bankruptcy court decision concluding that a penalty imposed by the State of Wisconsin Department of Workforce Development (DWD) against Brian Hansen for his company's failure to maintain workers' compensation insurance was dischargeable in Hansen's bankruptcy case, notwithstanding Bankruptcy Code sections 523(a)(1)(A) and 523(a)(7). Having considered the issues raised in this appeal, the parties' arguments, and the record, the Court concludes there is no need for oral argument. The Court further concludes that the bankruptcy court was wrong in determining that Hansen's debt for the DWD penalty fell outside the exception to discharge in section 523(a)(7). Because the Court finds the debt nondischargeable under section 523(a)(7), it need not decide whether the debt is also nondischargeable under section 523(a)(1)(A). The bankruptcy court's order is reversed.

### BACKGROUND

Brian Hansen failed to make sure that his company, H&S Landscape Products, Inc. (H&S), maintained workers' compensation insurance to protect its employees from workplace injuries, as required by Wisconsin law. As a result, the DWD assessed a $128,361.98 penalty against H&S, and, as the sole stockholder, president, and operating officer of H&S, Hansen was a "responsible person" under Wis. Stat. §102.83(8) and personally liable for the assessment.

Just before the DWD issued notice of the assessment, Hansen and his spouse filed a joint Chapter 11 bankruptcy petition. In their bankruptcy case, the Hansens proposed, and the

bankruptcy court confirmed, a reorganization plan under which general unsecured creditors would receive annual installments equal to the Hansens' annual future disposable income. The DWD did not filed a proof of claim for the workers' compensation assessment and no portion of the assessment was paid through the plan. The bankruptcy court entered a Final Decree on October 7, 2016 and the case was closed.

On May 12, 2017, the DWD filed a motion in the bankruptcy court, asking the court to confirm that the state could proceed with collection of the worker's compensation assessment from Hansen, notwithstanding his bankruptcy. The DWD argued that Hansen's confirmed plan did not bar collection because the assessment was excluded from the debtors' discharge under sections 523(a)(1)(A) and 523(a)(7).

After briefing and a hearing, the bankruptcy court denied DWD's motion. The bankruptcy court first observed that its confirmation order bound all creditors, including the DWD, to the terms of the debtors' confirmed plan. The court also recognized that, under section 1141(d)(2), if Hansen's debt to the DWD for the worker's compensation penalty was nondischargeable under section 523(a)(1)(A) or (a)(7), the DWD would not be bound by the plan and could continue with its collection efforts. The bankruptcy court then concluded, however, that the DWD assessment was not excluded from the debtors' discharge under either section. As a result, it held the DWD was bound by the terms of the confirmed plan and was barred from pursuing collection of the workers' compensation assessment from Hansen.

## DISCUSSION

This Court has jurisdiction over the appeal of the bankruptcy court's order under 28 U.S.C. §158(a). The bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo. *See Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011). No facts are in dispute.

On appeal, the DWD argues that the bankruptcy court's decision should be reversed because the bankruptcy court committed error in failing to conclude that Hansen's debt was a nondischargeable excise tax under section 523(a)(1)(A) or, in the alternative, a nondischargeable penalty under section 523(a)(7). As explained below, the Court agrees that Hansen's debt is nondischargeable under section 523(a)(7) and does not reach the issue of whether the debt might also be excepted from discharge under section 523(a)(1)(A).

### A. Under Section 523(a)(7), Bankrupt Debtors Are Not Entitled to Discharge Certain Governmental Penalties.

Section 523(a)(7) of the Bankruptcy Code excepts from discharge any debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a [specified type of] tax penalty." To qualify under this subsection, a debt must be (1) a fine, penalty, or forfeiture; (2) payable to and for the benefit of a governmental unit; (3) not compensation for actual pecuniary loss; and (4) not a specified type of tax penalty. 11 U.S.C. §523(a)(7).

The bankruptcy court concluded, and both the DWD and Hansen agree on appeal, that the DWD assessment at issue satisfies the first, third, and fourth elements. There is no dispute that the assessment is a penalty; it is not compensation for actual pecuniary loss; and it is not a tax penalty of the kind specified in the statute. But DWD insists the bankruptcy court was wrong in concluding that the assessment does not satisfy the second element, whether the assessment is "for the benefit of a governmental unit."

The Supreme Court interpreted this phrase in section 523(a)(7) twenty-five years ago in *Kelly v. Robinson*, 479 U.S. 36, 50 (1986). *Kelly* concerned a debtor who had previously been ordered to pay restitution to the state of Connecticut in connection with pleading guilty to second-degree larceny charges stemming from her wrongful receipt of welfare benefit payments. In holding that the debtor's criminal restitution obligation was nondischargeable under section 523(a)(7), the Supreme Court rejected the debtor's argument that the restitution order was not payable for the benefit of a government unit because the funds would be used to reimburse the victim – the state of Connecticut – for the fraudulently received benefit payments. The Supreme Court explained that the award was part of a state court criminal judgment and the "criminal justice system is not operated primarily for the benefit of victims, but for the benefit of society as a whole." *Id*. at 52. It further emphasized that a criminal restitution judgment is not necessarily tied to reimbursement in the amount of the harm caused but could be entered in a different amount to be repaid in a flexible way "tailored to the defendant's situation." *Id*.

The Seventh Circuit discussed section 523(a)(7), and distinguished *Kelly*, in the context of a state court *civil* restitution order in *In re Towers*, 162 F.3d 952 (7th Cir. 1998). The debtor in *Towers* had engaged in a fraudulent home mortgage scheme, which led the state to pursue a civil proceeding against him under a state law consumer protection statute. The debtor defaulted

and the state court entered a civil restitution order in favor of the state. When the debtor later declared bankruptcy, the bankruptcy court held the restitution debt was dischargeable because section 523(a)(7) did not apply to civil restitution awards. That ruling was reversed on appeal to the district court, but then reinstated (albeit on different grounds) on further appeal to the Seventh Circuit.

In *Towers*, the Seventh Circuit concluded the civil restitution award at issue was not payable to and for the benefit of a governmental unit because the state did not keep the restitution but was merely a collection agent for the victims of the debtor's fraudulent scheme. *Id.* at 955-56. In arriving at this conclusion, the Court of Appeals first recognized that when a state agency collects money and deposits it into the state's treasury, the collection is "for the benefit" of the government even if the government has a policy of compensating victims of crimes or civil wrongs. *Id.* at 955. It then explained, however, that because Illinois law required the state to pay out all amounts collected under the restitution judgment to victims of the debtor's fraud, the state retained no pecuniary benefit from the judgment. *Id.* at 955-56. The Seventh Circuit also noted that the debt could have been challenged as a nondischargeable debt attributable to fraud under section 523(a)(2), but that neither the state nor the debtor's victims timely availed themselves of that approach, which requires that such claims be brought prior to discharge. The creditors having snoozed on the most direct avenue to make the debt nondischargeable, the Court of Appeals explained it was not inclined to torture the language in section 523(a)(7) to help them. *Id.* at 956.

### B. The DWD's Assessment for Failure to Maintain Workers' Compensation Insurance is a Nondischargeable Penalty under Section 523(a)(7).

On appeal, the DWD argues that the bankruptcy court committed error in concluding that the assessment for failure to maintain workers' compensation insurance was not payable "to and for the benefit of a governmental unit" under section 523(a)(7). The bankruptcy court reached this conclusion based on its reading of both *Kelly* and *Towers* and two New Jersey bankruptcy cases, *In re Moran-Hernandez*, 544 B.R. 796 (Bankr. D.N.J. 2016), and *In re Hurtado*, No. 10-48668, 2015 WL 395217 (Bankr. D.N.J. Jan. 29, 2015). The bankruptcy court focused on the disposition of funds collected under the assessment, emphasizing that any funds the DWD recovered could not be used to pay the DWD's "general operational expenses." The court reasoned that because Wisconsin law, specifically Wis. Stat. §102.80(1)(a), (1m), requires that penalties collected for failing to maintain workers' compensation insurance be deposited into a

fund that benefits injured employees, the funds were not payable for the benefit of the government. It concluded that because the assessments benefited injured workers, the funds could not also be collected for the benefit of the governmental unit and thus fell outside section 523(a)(7)'s exception to discharge.

This Court agrees with the DWD that the bankruptcy court misinterpreted *Towers*. Unlike the state of Illinois in *Towers*, the DWD is not acting simply as a pass through for funds that are being returned to specific victims. Indeed, none of the money that DWD collects from Hansen will go to specific victims; the funds are not even earmarked for distribution to Hansen's own injured employees. Rather, the penalty will be used to offset the cost of an existing state program that provides compensation to the injured employees of uninsured employers. This is a direct benefit to the DWD, which administers that program. Put another way, the DWD's obligation to compensate injured but uninsured employees exists independent of any recovery from Hansen. In contrast, the state of Illinois' obligation to reimburse the victims in *Towers* existed only to the extent the state recovered funds under the restitution order. Thus, the DWD benefits from the recovery of the penalty against Hansen; funds collected from Hansen's penalty will help the DWD make payments to injured workers that DWD would otherwise have to fund from other sources. But, in *Towers*, the state of Illinois did not benefit in any way; it was simply a passthrough for any funds it collected.

The bankruptcy court thought it important that, for appropriation purposes, penalty moneys are considered segregated fund revenues and are not deposited into the general fund. Wis. Stat. §20.001(2)(d). The payments collected from uninsured employers are instead placed in a fund called the Uninsured Employers Fund (UEF). *See* Wis. Stat. §102.80. While the bankruptcy court correctly noted the moneys in the UEF "constitute a separate nonlapsible fund" and may be expended only to make payments to employees of uninsured employers and to obtain reinsurance for the payment of those claims, and "may not be used for any other purpose of the state," Wis. Stat. §102.80(1m), (3)(c), this does not mean that the funds are not *also* payable for the benefit of the State. Significantly, the Seventh Circuit specifically noted in *Towers* that "[i]f an agency collects money and deposits it into the state's . . . treasury, the fact that the government has a policy of compensating victims of crimes and civil wrongs does not make the collection less 'for the benefit' of the government." 162 F.3d at 955. This qualifier applies to the DWD's Worker's Compensation program. *Cf. Schneider Fuel & Supply Co. v. Indus. Comm'n*, 224 Wis. 298, 301, 272 N.W. 25 (1937) (purpose of Worker's Compensation Act "is to

give prompt relief to injured employees who are entitled to compensation").

More recently, an Indiana district court, *In re Brown*, No. 3:18-CV-427 JD, 2019 WL 1746279 (N.D. Ind. Apr. 17, 2019), applied section 523(a)(7) to a penalty related to overpayment of unemployment benefits. In its decision, the district court explicitly rejected the bankruptcy court's analysis here, and instead found support in *Towers*. The district court rejected the notion that funds are only payable for the benefit of a governmental unit if they are spent on administrative or operational expenses. Noting the Indiana Department of Workforce Development had a pre-existing statutory obligation to administer the unemployment benefits program and to make benefit payments to eligible claimants, the *Brown* court concluded that payments of the penalties conferred a financial benefit on the government by helping it meet its obligations. The fact that the government then spent the funds pursuant to its statutory mandate, did not mean the payments did not benefit the government. *Brown*, 2019 WL 1746279, at *5-6 (citing *Towers*, 162 F.3d at 955-56).

The same analysis is applicable to this case. The penalties recovered under Wis. Stat. §102.82(2)(a) are used to make payments to eligible claimants pursuant to Wis. Stat. §102.81(1). The collection of the penalties benefits the State by allowing it to meet its statutory obligation to injured employees of uninsured employers. Furthermore, the uninsured employer penalty at issue here is not the only source of funding of Wisconsin's UEF. The trust fund consists of *all of the following*:

> (a) Amounts collected from uninsured employers under s. 102.82.
> (b) Uninsured employer surcharges collected under s. 102.85(4).
> (d) Amounts collected from employees or dependents of employees under s. 102.81(4)(b).
> (e) All moneys received by the department for the uninsured employers fund from any other source.
> (f) Amounts transferred to the uninsured employers fund from the appropriation account under s. 20.445(1)(ra) as provided in s. 102.81(1)(c).

Wis. Stat. §102.80(1). If the State does not collect sufficient funds from uninsured employers, funds from other sources can be used to pay claims to injured employees. So, every dollar recovered under section 102.82 conceivably benefits the State because it is a dollar not appropriated from another source. For instance, under Wis. Stat. §20.445(1)(ra), up to $500,000 each fiscal year may be transferred from an account appropriated for administration funds to the UEF.

This Court thus concludes that penalties recovered under Wis. Stat. §102.82(2)(a) are

payable to *and for the benefit of* a governmental unit. They are collected by the government and deposited into funds that are controlled by the government and from which the government finances its obligations to employees of uninsured employers. That those obligations include paying benefits to third parties does not make the payments any less for the benefit of the government. *See Towers*, 162 F.3d at 955. The penalties thus satisfy all elements of 11 U.S.C. §523(a)(7) and are not dischargeable in bankruptcy.

## CONCLUSION AND ORDER

For the reasons stated above, the bankruptcy court's decision is reversed, and the case is remanded to the bankruptcy court for entry of an order consistent with this decision.

SO ORDERED this 8th day of January, 2021.

s/ *Brett H. Ludwig*
BRETT H. LUDWIG
United States District Judge
